Oh yes, oh yes, oh yes! The Honorable Sheriff Clark, 5th District, State of Illinois, is now in session. Please be seated. Morning everybody. As you can clearly see, Justice Moore is not present, but he will be listening to the recording of the argument. He will remain on the panel and participate in the disposition. The first case we have on the docket is Kator v. Southern Illinois Hospital Services, number 5-24-0416. Appellant, are you ready to proceed? Yes, sir. You may. May it please the Court. Nick Cejas, Counsel for the Appellant, SIH. This is an appeal from a common law retaliatory discharge case arising on my client's termination of the plaintiff, a former manager of a sleep disorder center. A jury in Jackson County awarded substantial compensatory and punitive damages, and we have appealed multiple aspects of that award. I want to start with compensatory damages, the single largest category of which was economic losses totaling $291,251. Counsel, in a common law claim for retaliatory discharge, what types of damages may a plaintiff seek? Good question, Your Honor. So, economic damages are certainly a component of it. For instance, lost wages, and that was something that was presented at trial and awarded by the jury. And although we have some other issues with the verdict, that is an award that we are not directly challenging here. There also is an ancillary claim, or can be, for intentional or negative emotional infliction of stress. However, our position is that it is, in fact, a separate cause of action, and not one and the same. Did SIH object to the inclusion of emotional distress as an element of damages on the verdict form? Not at trial, Your Honor. We did in the post-trial motion when we moved for an arrest of judgment. And that is, the denial of that motion is the basis for our appeal. That aspect of the compensatory award, emotional damage, which totaled, in this case, $250,000. As to that part of the case, the theory, Your Honor, was that plaintiff was devastated by his termination, feeling shame and embarrassment, and was forced to take a lesser-paying job out of state in Indiana. In theory, as I just mentioned, that second aspect of the award is fine. It is essentially intentional infliction of emotional distress theory. But, as executed here, though, it is our position that it's separate from two fundamental legal problems. The first, as I just noted, that plaintiff never pleaded an independent cause of action for emotional distress. And second, plaintiff failed to prove severe emotional distress. Intentional infliction of emotional distress, as I said, is a cause of action ancillary to retaliatory discharge. Rather than an element for the discharge itself. And in our briefing, we have cited several examples of Illinois appellate decisions in which emotional distress is presented as a cause of action to stick from, although incident to, a claim for retaliatory discharge. If emotional distress is compensable simply as an element of damages for retaliatory discharge, which is what the plaintiff's position is, then there would be no need to ever plead and prove a separate cause of action for intentional infliction. And the bar, why that's important, is that the bar in a retaliatory discharge case such as this to prove intentional infliction of emotional distress is high. The defendant's conduct needs to be extreme. It needs to be outrageous. The defendant's conduct needs to intend to cause severe emotional distress or know that there's a high probability that it's likely to cause severe emotional distress. And then last, there has to, in fact, be severe emotional distress. And courts interpreting that standard have found it very difficult to meet in the employment context because employers often take actions in the course of business that cause emotional distress. Courts are concerned that if everyday job stresses resulting from discipline, from personal conflicts, from job transfers, or even terminations could give rise to a cause of action for intentional infliction of emotional distress, then nearly every employee would have a cause of action in any case, no matter what the reason for discharge is. As a result, liability for a claim of intentional infliction of emotional distress in the employment context is only found where the conduct is truly egregious. Examples of such conduct are things like coercing an employee to falsify reports or to take some other action, for instance, in the setting of sexual harassment. By contrast, courts have found that a plaintiff fails to give a cause of action for intentional infliction. Where a plaintiff lets her employer criticize, demote, and discharge her after she reported criminal activity to her supervisor. That's Harris v. First Federal Saving Loan, which is cited in our briefing. And according to that case, while reprehensible, that conduct didn't rise to the level of extremely outrageous conduct. And that's exactly the situation that we contend occurred here. Plaintiff didn't plead the type of egregious conduct necessary to support an award of emotional distress damages. There was no allegation of coercive behavior harassment. Instead, plaintiff simply alleged that SIH terminated his employment after he reported claims of fraud and abuse. Plaintiffs failed to plead a cause of action for intentional infliction, or even plead sufficient facts to support such an action, requires arrest of judgment here. In the alternative, we also moved in our post-trial motion for judgment notwithstanding the verdict because plaintiff ultimately failed to prove that severe emotional distress that's required to recover in the employment setting. At least one court, Welsh v. Commonwealth Edison, the first district opinion against that in our briefing, is how that anxiety, humiliation, and emotional distress alone at any medical care is insufficient to support a finding of severe emotional distress. And there was no evidence presented at trial in this case that the plaintiff was hospitalized or otherwise treated for any emotional distress. Does it require expert testimony? Under Thompson, it would not require expert testimony, Your Honor. But there could still be, for instance, going to a doctor to seek medical treatment. And in our opinion, that is something to reach that threshold. Severe emotional distress is required. So, no, I think the case will hold. There doesn't need to be expert testimony to establish that. But what there does need to be is some actual harm that requires, you know, medical or professional treatment of some kind. Aren't you asking us to simply blow off the jury? No, Your Honor. We're not taking that position to blow off the jury. In our opinion, this question should have never reached the jury in the first place. It's why we moved it for the rest of the judgment, because it wasn't pleaded and proved, at least not at the threshold that's required of intentional emotional distress in this particular setting. And at best, what the plaintiff could prove at trial would regard a variety of emotional distress, which, under our reading of Welsh, is insufficient to prove or establish emotional distress in this context. I want to spend most of my remaining time on the issue of punitive damages. And the jury awarded $3 million in punitive damages here, which, based on the existing compensatory award, represents a ratio of more than five and a half to one punitive to compensatory. And that ratio grows if the court accepts our argument regarding the impropriety of the emotional distress damages awarded here. As an initial matter, an award of punitive damages, the court knows, is to provide a deterrent where the compensatory damage teems insufficient to essentially establish that deterrent effect. And there's no dispute in this case that the compensatory damage awarded here against SIH is significant. They totaled more than $500,000. Just as importantly, punitive damages are only appropriate where tort fees are acted with fraud or actual malice or deliberate violence or oppression when the offense acted willfully or with such gross negligence as to indicate a wanton disregard of the rights of others. And we don't believe that the record here is sufficient to support that conclusion that SIH was out to hurt Mr. Cater or otherwise acted out of personal animus. The decision maker in this case testified that she terminated Mr. Cater for poor job performance. While the jury ultimately disagreed, it is important to note that there was evidence presented at trial that an internal audit conducted in 2015 found issues with orders that were generated out of the CPAC clinic, which was part of the center for which Mr. Cater was responsible. And when the audit found those shortcomings, he was assigned the responsibility to correct those. But on a re-audit conducted shortly before his termination in 2016, it was found that that correction had not been completed. Mr. Cater also received a disciplinary warning in September 2015 for which he was placed on a corrective action plan. Knowing Mr. Cater's job performance was deemed to meet standards during his review in July 2016, Ms. Oldall testified, who was the decision maker in this case, that she discussed concerns with Mr. Cater at the time regarding his productivity. And finally, Ms. Oldall expressed concerns regarding Mr. Cater's management of his employees, particularly during an October 2016 department meeting. So, while perhaps the termination of Mr. Cater so soon, after reporting his various compliance concerns to the CEO, could be deemed an error of judgment, it does not establish SIH as having acted vengefully. For that reason, we contend the reward of any punitive damages in this case is against the manifest plate of the evidence. Putting that aside, to the extent that the court concludes punitive damages were, in fact, appropriate, and we get past that threshold that it should have been submitted during the first place, we move that the circuit court err in refusing to remit the punitive award on our post-trial motion. While there is no guideline ratio in which punitive damages awards cannot exceed, we have cited in our briefing two examples in which the Illinois Supreme Court remitted a punitive damage award to a one-to-one ratio. Those cases set forth the common law principles under which punitive damages may be awarded. Jury has considered the character of the defendant's act, the nature and the extent of the harm to the plaintiff that the defendant caused or intended to cause, and the well-being of the defendant. The reward of $3 million also violates SIH's due process rights. And the U.S. Supreme Court, as well as Illinois courts, have identified three guideposts to consider in determining whether the amount of punitive damage award comports with due process. And those three guideposts are very similar to the common law principles I just referenced, which include the reprehensibility of the defendant's conduct, the disparity between the actual harm and the punitive award, which is, again, that ratio that I discussed. And lastly, the difference between the punitive damages award and a civil penalty authorized or imposed for comparable conduct. Here, as explained previously, there was no evidence that SIH acted out of animus. The most that can be said on the record is that SIH made an error of judgment. Furthermore, there was no evidence in the record of repeated misconduct of the sort that plaintiff allegedly injured the plaintiff in this case. There is also no evidence of any physical harm to the plaintiff, which is another thing that courts consider when they're looking at the reprehensibility of defense conduct. As I mentioned, there was, for example, no evidence of visits to a doctor. And the way courts evaluate that in looking at reprehensibility is when it's purely an economic damage or emotional damage as opposed to physical injury, that reprehensibility is lower on the scale. In fact, reviewing the record, it appears that the juror may award punitive damages to punishments or conduct that bore no relation to the plaintiff's harm. And specifically, what I'm referring to is in closing argument. Plaintiff's counsel argued that imposing punitive damages would, quote, tell the hospital that the community demands compliance with federal rules and regulations for Medicare and Medicaid fraud to tell the hospital that fraud is simply not okay. The cause of action, however, was one for retaliatory discharge. It was not a claim for whether or not SIH acted in such a way to violate Medicare and Medicare regulations. The actions, whether that was true or not, and that's not what the trial was on, but those actions were independent from those upon which liability was premised in the first place, which was the decision to terminate. So we don't believe that that should serve as the basis for a punitive award, and we believe that that argument improperly inflamed the jury, and it was not a proper basis to be considered in that award. So for those reasons, we ask that the court warrant punitive damages or find that punitive damages justified here. And again, this is a de novo review when we're looking at remitted. The court should remit that award to an amount equal to the compensatory damages in this case. And I know I'm running short on time. There's two other issues we raised on appeal. One dealt with an issue with the jury instructions, and particularly as to whether it's proper to instruct as to the reason the discharge should be a proximate cause as opposed to the proximate cause. And admittedly, that instruction is based off of Illinois Patent Instruction 250.02. We don't believe that's a proper instruction law, and I'll rest on my briefing for that issue. And finally, we raised that SI was unduly prejudiced by exclusion of three witnesses. Those three witnesses were going to testify as to plaintiff's conduct as being independent and legitimate, and honestly held business reason for termination of the plaintiff. They were excluded despite the fact that they were identified in interrogatory answers in October of 2018, although the defendant failed to specifically list them later on on the 213 disclosure. And while the court certainly has discretion in Rule 219 to impose sanctions for the failure to do that, we believe that sanction in this case was too harsh a remedy, particularly given the fact that there was no surprise to the plaintiff, given the fact that the identities of those witnesses and the areas of their knowledge were disclosed at the outset of the case. So we ask that the judgment trial court be reversed and remanded for a new trial or in the alternative that there's a remitted amount of damage to the ward. How do you respond to the plaintiff's argument in their brief that the jury reduced their request for monetary damages by over $1,800,000? They awarded less than the ask during the closing argument. That's correct, Your Honor. But I would still point to the fact that the award of the punitive damages, as compared to the pet service, what we're looking at under the standards of deciding whether the punitive award meets due process rights, is at 5.5 to 1. So while, yes, it is at a number lower than what the ask was, when we look at the actual harm that the jury found, which is about $500,000 worth in relation to the $3 million in punitive, we believe that that is improper and it exceeds basically the ratio that would comply with due process. Didn't the plaintiff, before he was canned, get stellar performance reviews? He did. I would disagree with it being stellar, Your Honor. But I do agree that in 2015, I think he got a 2.46 out of 3. In 2016, it was somewhat similar. He met expectations. That's correct. But I would also, as I noted before, point out that there was testimony in the lower court that in the course of those performance reviews, there were various discussions had at the plaintiff regarding his job performance, regarding the lack of productivity, and then, again, the fact that there was an odd 2015 that cited certain things, issues with orders that were being generated out of the clinic that Mr. Cater was asked to correct, that they later learned in 2016, shortly before the termination, when there was re-audit done, that those things had not been corrected. And then lastly, there was an argument in October of 2016, department meeting, in which was part of the decision to terminate the plaintiff, and that they felt that he didn't properly lead his team and control the situation. So I think that there were additional circumstances that came to light after that last performance review. Any further questions? No further questions. Thank you. Thank you, Your Honor. Thank you. Appellee. Thank you, Your Honor. My name is Mary Ann Seday and I represent, excuse me for my voice, I'm sorry. I represent the appellee in this case, Kevin Cater. I'm going to begin by speaking just for a few minutes about emotional distress damages here. The defendant argues that the plaintiff was not entitled to emotional distress damages based on two different theories. One being that he failed to plead and prove intentional infliction of emotional distress. The second being that he failed to put on evidence of severe emotional distress. Let me say that what the defendant has done here is confuse two different causes of action. Our claim, plead and proved, was for retaliatory discharge. And there's no question that the cases hold that emotional distress damages are one type of damage available to a plaintiff in a retaliatory discharge case. It is true that it is very difficult to bring a claim for intentional infliction of emotional distress in the employment context. But we didn't bring that claim. It's a totally separate cause of action. It was not our claim. And in our brief, we cite two of the cases that discuss the differing elements of the two claims. Our claim is a retaliatory discharge claim. The elements of a claim for retaliatory discharge, our claim, do not include either outrageous conduct or severe emotional distress. And one of the reasons we know that is we look at the instruction, IPI 250.02, and it does not require either one of those things. And the other thing we know is that under decisions like Clemens, our courts have held that retaliatory discharge claims should be analyzed using traditional tort analysis. Emotional distress damages are one type of damage available in the classic tort claim. The other thing I would point the court to are decisions like Clark v. Owens-Brockway that hold that if only the plaintiff testifies about emotional distress, that that's adequate to show garden-of-variety emotional distress. You don't need an expert. You don't need medical testimony. And we didn't need to have any evidence that he went to the doctor or went to a hospital. Let me turn now to punitive damages. The defendant claims in their brief that punitive damages are disfavored in retaliatory discharge claims. That is not the law in Illinois. Punitive damages are not disfavored. And as the court says in the Marston case, which is an Illinois Supreme Court case, retaliatory discharge claims, and this is a quote, only serve as a successful deterrent if punitive damages can be assessed. So contrary to the defendant's position in its brief, they are not disfavored in these claims. Moreover, appellate courts in Illinois have upheld similar substantial punitive damages case awards in other retaliatory discharge cases. Again, we've cited these cases in our brief. But in Crowley, $2 million in punitive damages was upheld in a retaliatory discharge case. In Blount, $2.8 million. And in Holland, $3.6 million. These are all retaliatory discharge cases in which punitive damages were approved. The need for punitive damages is underscored in this case by the defendant's continued insistence in its brief that there was no Medicare or Medicaid fraud here. The plaintiff didn't prove that the fraud had anything to do with his discharge. In fact, the jury found the exact opposite of that. And yet, in their brief, they continue to argue we didn't do anything wrong in terms of Medicare and Medicaid regulations. This is a not-for-profit corporation, but the cases say that's not relevant. And I would point out that in this case, the CEO of SIH testified that after all expenses, including reinvestment in hospital facilities and service to the poor in the area of southern Illinois, they had excess revenues of $46 million. On the issue of vicarious liability, it is not true that there is no vicarious liability when the wrongdoer is an employee of the institution. Susan Odle, who made the decision to fire our plaintiff, was the highest official at the hospital. When she acted to discharge Mr. Kader after 30 years of extraordinary service, she was acting as SIH. Punitive damages are warranted here because the defendant acted with actual malice. They intended, this is an intentional claim, to harm Kevin Kader by depriving him of his livelihood. They did that in violation of their own policies, which said that they forbid retaliation. This was not an advertence. It wasn't a mistake. It wasn't an error of judgment. This was conscious harm that was caused to Kevin Kader. And in fact, Ms. Odle testified that when she makes a decision to fire somebody, she knows, and again, this is a quote from the record, you are changing someone's life. The cases that defendants cite are easily distinguishable. They aren't retaliatory discharge cases. They are cases where there was a modest award of compensatory damages. There was a lack of evidence to show intentional, premeditated harm. Here, substantial compensatory damages were awarded, more than half a million dollars. And it was clear evidence of an intentional scheme. Mr. Sahas talked about this audit that was done just before Mr. Kader was fired. Well, it's our position that that audit was done specifically to trump up something to justify the firing once he had gone to the CEO. And we demonstrated conclusively on the record that the regulations that they claim he was violating that were discovered in this audit did not forbid the conduct that the defendant claims justified Mr. Kader's termination. When I turn to federal law on punitive damages and whether we have a due process problem here, let's talk for just a minute about the reprehensibility of the conduct involved. You know, defendants seem to believe that physical harm doesn't include mental pain and suffering. But the jury had the opportunity to observe firsthand at trial the suffering and the shame that Mr. Kader continued to experience as of the date of the trial. In addition, one of the factors to consider in terms of punitive damages under the due process clause is the financial vulnerability of the plaintiff. Here we have a 15-year-old man, single, who worked 30 years at one place. And the facts are that after he lost his job at SIH, he had to take a job where he worked three hours from home and that he slept in a recliner and showered in the maintenance room of the hospital where he was working because he couldn't afford a hotel room. The other thing I would point out is that this decision to fire Mr. Kader was not isolated. For many years, the hospital system permitted the medical director, who was the person charged with his Medicare and Medicaid fraud, to retaliate over and over again against Mr. Kader. In addition to the fact that Mr. Kader was retaliated against by Dr. Brown, the medical director, over years, and that he reported it over and over again, but it was permitted to go on, four other sleep center employees, were disciplined for calling attention to Dr. Brown's violations of Medicare and Medicaid regulations. Finally, on the issue of intentional malice, again, there's no evidence of a mistake. And the deceit is shown here by this trumped up and false justification uncovered in this audit after he went to the CEO of the hospital system that this was an intentional decision carefully carried out to fire somebody who had a great record. And I will point out that there is not a single negative word about Mr. Kader at SIH. He's the guy who created this program, who grew it, who developed it for the hospital, and made a lot of money for them, frankly, until three months before he's discharged. Four months before he's discharged, he gets another one of those really good evaluations, and then all of a sudden, you know, it all goes south, according to the hospital. In terms of the ratio here, you know, we have 5.5 million in, I'm sorry, we have a 5.5 ratio between the compensatory damages and the punitive damages. That's significantly less than the sort of rule of thumb that as long as it's less than 10 to 1, that compensatory damage, that punitive damages are presumptively valid. And again, I point out the fact that similar damages have been awarded in other retaliatory discharge cases. On the issue of instructional error, let me just say a couple of things. There were three instructions that were given to the jury. Three of them that used the phrase, a proximate cause. One was the issues instruction, one was the burden of proof instruction, one was the proximate cause definition. All three were IPIs. And although the defendant did object to the burden of proof instruction and say that it should say the proximate cause as opposed to a proximate cause, they failed to object to the other two of the three. And in fact, consented to the giving of the other two instructions, the issues instruction and the proximate cause definition. And we've cited in the brief the record at which point they did consent. 250.02 has been promulgated by the Illinois Supreme Court for use in these retaliatory discharge claims. The fifth element of that instruction, as promulgated by the Supreme Court, calls for us to prove a proximate cause. And significantly, a couple of things that the defendant failed to do, they didn't tender an alternative instruction. And they were not consistent in objecting to the use of the article A as opposed to B. Perhaps more importantly, the defendant really was not prejudiced by the use of the IPI. Which, by the way, the Illinois Supreme Court has had an effect for I think it's like 14 years now. And there's been no change in the IPI over that period of time. 250.02 was given along with the 15.01, which defined proximate cause. And it defined it in the usual way. It's a cause which in the natural or ordinary course of events produced the plaintiff's injury. And that's what this case is about, is whether the retaliation or the termination of Mr. Cater produced the injury here. And the critical principle is whether it produced the injury. You know, we could talk forever about A versus B. I don't know how much juries pay attention to the article A versus the article B. I have my own theories about it, but none of us really know. The important thing here is that we never argued that this was a mixed motive case. We tried this case on the principle that Mr. Cater was fired in retaliation for whistleblowing. The defendant took the position that he was fired for a bad performance in the last three or four months of his employment. We never said to the jury at any time, hey, well, you know, even if he was a bad performer, oh, by the way, they were also retaliating against him. There were two distinct theories in this case. The plaintiff had a theory about why Mr. Cater was fired. The defendant had its own theory. Nobody tried this case as a mixed motive case. There are a lot of interesting cases out there about this whole business of the use of the word A versus B. We cited a couple of criminal cases in our brief, People v. Wilson and People v. Morgan, where proximate cause of injury is an element of a crime. And if you look at that People v. Wilson case, it's a really interesting case because they talk a lot about A versus B. And basically what the appellate court in that case says, and they did a review of the statutes, they said there's 19 statutes in Illinois that use the phrase proximate cause. Ten of them say A, nine of them say B. Basically what the court in People v. Wilson says, and it's been reaffirmed in another case that we cite called People v. Morgan, is if the legislature wanted to say sole cause, they could have done that, but they didn't. And in these cases, the court decided that the use of A versus B is not only not plain error, it's not error at all. The cases that the defendant relies upon really are cases where they worked about instructional error. This case is about the instruction that was given, and the instruction that was given was the IPI instruction, and it was proper. Thank you, Judge. Plaintiffs suggest that SIH lost the trial because it deserved to lose. But their argument demonstrates why we don't know that, and we can't know that. Their argument underscores that they made this trial as much about SIH's alleged Medicare and Medicaid conduct, the subject of the whistleblowing, as opposed to SIH's conduct toward him. As a result, SIH respectfully contends that the jury's decision was improperly influenced by passion or prejudice. Touching again on the punitive damages award, and counsel in their discussion about why they believe the amount and the ratio in this case is appropriate, cited Holland, which is a workers' compensation case. There's a couple of things about Holland that I want to bring to the Court's attention. One is a workers' compensation case, a retaliatory discharge case in that setting, and obviously workers' compensation is part of statutory schemes. That's one difference, but the other thing with that is the amount of compensatory damages in that case were more than the punitive damages that were awarded. That was also a case where there was a clear physical injury to the plaintiff. The plaintiff suffered an injury on the job. There was evidence in that case that the defendant ignored the job restrictions that were placed on the plaintiff as a result of his work injury and ultimately, in the end, discharged him in retaliation for him exercising his rights under the Workers' Compensation Act. That stands in stark contrast to this case where, again, the injury in this case is not physical. It is economic, and it is allegedly emotional, but again, not to the level of emotional that we believe is required in a case such as this. And plaintiff suggests that the absence of physical harm to the plaintiff should not matter because he was mentally harmed. But plaintiff admitted he received no care treatment, no psychological care, no medical care, and it's better repeated that employers often take actions that, in the course of business, cause emotional distress. In short, plaintiff suffered only limited economic and emotional damages for which he was otherwise already compensated by a jury. The tortious conduct at issue here was an isolated incident, and the record does not support anyone acting out of personal animus. Therefore, to the extent that the court believes that the issue should have been submitted to the jury in the first place, we believe the court, in exacting its de novo review, should remit that award to equal the amount of compensatory damages awarded. On emotional distress damages, plaintiff cites cases that support recovery of emotional distress damage from other types of torts, but none of those cases relieve a plaintiff of that special burden of proven intentional inflection on emotional distress and retaliatory discharge. At least, I are reading. For that reason, I just discussed, which is in the context of an employment case, no matter what action is taken, there is going to be some distress, because it is someone's livelihood that they're losing. To hold that simple garden variety is enough, then that opens the door for any employee to come and plead and prove an intentional inflection on emotional distress case, regardless of how severe or extreme or not the injury is. On the jury instruction question, again, I think that the case law has held and shown that a mixed motive is not appropriate. Plaintiff's argument is that they did not make that argument. While that may be true, it did ultimately end up in the jury instructions with A as opposed to B. It was objected to on that burden of proof instruction. What about the two times you didn't invite error? I agree that those subsequent two times were not objected to. I would disagree that it invited error, because ultimately there was the first house presenting that burden of proof instruction. That objection made with, I would contend, a proposed alternative instruction, because it is quite clear on the record what that alternative defendant was proposing was, which is the use of the word D as opposed to A. Our contention is that issue was preserved and that that is instructional error and that it does not correctly state the law, despite the fact that it is an IPI instruction. Unless the court has any additional questions, I will cede the remainder of my time. Thank you very much for your arguments. We will take this matter under advisement and issue a ruling in due course. Thank you.